**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

DARWIN LEE ZOCH,

      Petitioner,

vs.

UNITED STATES OF AMERICA,

      Respondent.

No. C 13-4107-MWB
(No. CR 11-4031-MWB)

**MEMORANDUM OPINION AND ORDER AFTER EVIDENTIARY HEARING REGARDING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE**

_____

**TABLE OF CONTENTS**

I.    INTRODUCTION......................................................................... 1
     A.    *Prior Proceedings*................................................................. 1
     B.    *The Evidentiary Hearing* ...................................................... 3
II.   LEGAL ANALYSIS ...................................................................... 7
     A.    *Zoch's Claim* ..................................................................... 7
     B.    *Certificate Of Appealability*................................................ 12
III.  CONCLUSION .......................................................................... 13

## I.    INTRODUCTION

### A.    *Prior Proceedings*

This case is before me after an evidentiary hearing on petitioner Darwin Zoch's November 4, 2013, Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28

U.S.C. § 2255 (§ 2255 Motion) (Civ. docket no. 1). Zoch claims that his trial attorney provided him with ineffective assistance of counsel by failing to call his wife to rebut the prosecution's evidence on a "felon in possession of a firearm" charge against him.

As I explained in my Memorandum Opinion And Order (Civ. docket no. 7), filed February 17, 2015, the trial transcript reflects that, on February 1, 2010, while executing a search warrant at the residence of Zoch, his wife Janelle, and Janelle's minor daughter, on a farm in Buena Vista County, Iowa, concerning possible production of pornography, law enforcement officers discovered four loaded firearms and 646 rounds of ammunition at various locations throughout the house. More specifically, a bolt-action .22 caliber rifle was found just inside the door of the home; a 12-gauge shotgun was found in the "spare room," just outside the house, off a wooden deck; a 20-gauge shotgun was found behind the door in the bedroom used by Zoch and his wife; and a pink .22 caliber rifle was found next to a desk or computer stand in the same bedroom. The ammunition was found in or near the various firearms. Law enforcement officers, knowing that Zoch had previously been convicted of one or more felony offenses, seized the firearms and arrested Zoch.

In an Indictment (Crim. docket no. 2), handed down March 22, 2011, a Grand Jury charged Zoch with one count of being a felon in possession of three of the firearms found at the residence—not including the pink .22 caliber rifle—and the 646 rounds of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After a two-day trial that began on November 15, 2011, the jury returned a verdict of guilty, and found that Zoch unlawfully possessed the 20-gauge shotgun, the 12-gauge shotgun, and the ammunition, but not the .22 caliber rifle charged in the Indictment, which had been found by the front door of the Zochs' residence. Verdict Form (Crim. docket no. 58). On March 12, 2012, I overruled Zoch's objection to application of the "armed career

criminal" sentencing enhancement, but granted his motion for a downward variance, and sentenced him to 180 months of imprisonment. Hearing Minutes (Crim. docket no. 82).

On November 4, 2013, new counsel filed Zoch's Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255 (§ 2255 Motion) (Civ. docket no. 1), which initiated this civil case. Zoch's § 2255 Motion was in the form of a brief, arguing that his trial counsel provided ineffective assistance of counsel by failing to present the testimony of his wife, Janelle, concerning her sole possession of the firearms at issue in the "felon in possession" charge against Zoch. Zoch attached to his § 2255 Motion a Declaration by Janelle (Civ. docket no. 1-1), stating that she was told by Zoch's attorney that she would testify at trial, that she was available to do so, and the content of her testimony at trial, had she been called. After briefing of Zoch's § 2255 Motion was completed, I entered a Memorandum Opinion And Order (Civ. docket no. 7), on February 17, 2015, setting an evidentiary hearing on Zoch's "ineffective assistance of counsel" claim. That hearing was eventually reset for June 29, 2015.

### B. The Evidentiary Hearing

At the evidentiary hearing, Zoch presented Janelle's testimony by videoconference. The respondent presented the "live" testimony of Zoch's trial counsel and offered into evidence a copy of Janelle's Plea Agreement leading to her guilty plea to a charge of conspiracy to obstruct justice in violation of 18 U.S.C. §§ 371 and 1503.[1] I now find the following facts.

---

[1] This charge against Janelle arose from her participation in a conspiracy to obstruct the administration of justice in the underlying criminal case against Zoch by helping him to abscond, flee to avoid justice, and violate the conditions of his federal supervised release. *See United States v. Janelle Zoch*, No. CR13-4047-MWB (N.D.

Zoch's trial counsel was an experienced criminal defense attorney. In trial counsel's view—and, indeed, in the view of Zoch's § 2255 counsel—the critical issue in Zoch's criminal case was whether or not he possessed the charged firearms and ammunition. The theory of the defense was that Zoch did not exercise and had no intent to exercise sufficient dominion or control over the firearms and ammunition to be found guilty of constructively possessing them. Components of that theory were that the guns and ammunition were Janelle's, that she had a constitutional right to possess them, and that only she and/or her daughter exercised any dominion or control over them. Trial counsel understood that Janelle could provide important testimony in support of that theory of defense. That potential testimony included that Janelle was familiar with firearms and had used them since she was a child; that all of the firearms in the house were hers or, in the case of the firearm found by the door, loaned to her by Zoch's father; that only she or her daughter ever handled them and that Zoch never had any intention of possessing, handling, or using them; that she possessed the firearms to protect Great Dane puppies, which she was raising, from other animals; that she had placed the firearms around the house, with ammunition, to make it easier for her to get to them, if she needed them, because of her physical limitations (arthritis and fibromyalgia); and that Zoch knew she had the firearms, but may not have known where she had placed them around the

---

Iowa), Indictment (docket no. 5). At sentencing, pursuant to Janelle's plea agreement, the following charges against her were dismissed: eight counts of making false statements to the United States Marshal's Service, in violation of 18 U.S.C. § 1001; two counts of concealing evidence, in violation of 18 U.S.C. § 1519; and one count of concealing a person from arrest, in violation of 18 U.S.C. § 1071. *Id*. at Sentencing Hearing Minutes (docket no. 193); Judgment (docket no. 194).

house. Trial counsel also knew that there was no other witness who could have testified to the inner workings of the Zoch household, particularly in relation to the firearms.[2]

Trial counsel also knew, however, that Janelle initially had an extreme physical reaction to the suggestion that she should testify, said that she had mental issues that would make it impossible for her to testify, and that she vehemently declined to do so. Trial counsel believed that it was his decision whether or not to call Janelle as a witness, not Zoch's. He reserved his final decision on whether or not to call Janelle, but he listed her as a witness to keep that option open, notwithstanding her reluctance to testify, and to avoid tipping off the prosecution that she would not testify.

More importantly, trial counsel learned from further discussions with Janelle that she had seen Zoch use a firearm, which trial counsel understood was one of the shotguns charged, to kill a raccoon. He also learned that Zoch had helped Janelle learn how to use her pink .22 caliber rifle, although this information was somewhat inconsistent with testimony from a prosecution witness that he had come to the Zochs' residence, while Zoch was not at home, to help Janelle "scope" her pink .22 caliber rifle and learn to shoot it. Trial counsel admits that he did not ask follow-up questions to clarify which firearm Zoch had used to shoot the raccoon or the precise timeframe of that incident, nor to clarify whether or not Zoch had handled or fired the pink .22 caliber rifle while showing Janelle how to use it. Trial counsel's explanation for not asking follow-up questions about the pink .22 caliber rifle was that he "did not want to know" the answers to those questions, at least while he was still uncertain about whether or not to call Janelle as a witness. Ultimately, trial counsel concluded that he could not put Janelle on the

---

[2] Trial counsel had concluded that he would not call Janelle's daughter for that purpose, because she had been traumatized by the prosecution's interview of her and because he believed she would also have given incriminating testimony, if called. Zoch has not made that decision the basis of a claim for § 2255 relief.

5

stand, because her knowledge about the incidents in which she had seen Zoch use a firearm and her emotional reaction to the thought of testifying made her a "loose cannon"; he could not let Janelle lie about the incidents in which she had seen Zoch use a firearm, if they came up; and Janelle's testimony would effectively "sink" his theory of defense, if Janelle told the truth about those incidents.

In light of trial counsel's testimony, the potential importance of Janelle's testimony, Janelle's behavior while testifying, and her convictions for other offenses involving dishonesty, I do not find credible Janelle's assertion that trial counsel only talked to her once about testifying, and that he said that she would be a witness. Nor, in the absence of any written documentation or other corroboration, like mileage records, sign-in sheets, affidavits from the federal public defender staff, etc., do I find completely credible trial counsel's assertion that he met with Janelle and Zoch face-to-face a "dozen" times. I am surprised that trial counsel did not make even a single written note or memorandum to file to memorialize the topics of any of the "dozen" conversations, which I believe would have been common practice. Nevertheless, notwithstanding Janelle's testimony that she was never told that she would not testify at the trial, I find that trial counsel informed both Janelle and Zoch, prior to trial, of his intention not to call Janelle, and the reasons why. I also find that trial counsel informed the Zochs that he would, instead, concentrate on impeaching a prosecution witness who would testify that he had seen Zoch in possession of one or more firearms. Trial counsel chose to leave Janelle on the witness list and, thus, to keep her sequestered during trial, to try to minimize the likelihood that jurors would recognize her as Zoch's wife, if she were in the courtroom, and wonder why she was not testifying. Thus, Janelle was not in the courtroom during trial until closing arguments, at which point several other people were in the courtroom gallery for the first time.

## II. LEGAL ANALYSIS
### A. Zoch's Claim

I set out the standards for § 2255 relief and, more specifically, for such relief on a claim of "ineffective assistance of counsel," in some detail, in my prior Memorandum Opinion And Order setting an evidentiary hearing on Zoch's ineffective assistance of counsel claim. I will not reiterate all of that discussion here. Instead, I will focus on application of the key legal standards for the matters at issue here.

Although I do not necessarily agree that trial counsel, rather than the defendant, should have the final authority to decide what witnesses to call, it is well-settled that "'[d]ecisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight.'" *Forrest v. Steele*, 764 F.3d 848, 858 (8th Cir. 2014) (quoting *Hanes v. Dormire*, 240 F.3d 694, 698 (8th Cir. 2001)). As the Eighth Circuit Court of Appeals has explained,

> *Strickland* teaches that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690, 104 S.Ct. 2052. We have consistently held that a reasoned decision not to call a witness "is a virtually unchallengeable decision of trial strategy," in part because "there is considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences." *Staples*, 410 F.3d at 488-89, and cases cited.

*Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010). On the other hand,

> "[F]ailing to present mitigating evidence may be ineffective assistance if, due to inadequate trial preparation and investigation, 'counsel has through neglect failed to discover such evidence.'" *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir.1991) (quoting *Laws v. Armontrout*, 863 F.2d 1377, 1385 (8th Cir.1988)). "[S]trategy resulting from lack of

7

>   diligence in preparation and investigation is not protected by
>   the presumption in favor of counsel." *Id*.

*Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013). Here, trial counsel was clearly aware of and made some investigation of Janelle's potential testimony.

Zoch argues that he can overcome the presumption of competence as to trial counsel's decision not to call Janelle as a witness at trial, first, because she was "akin" to an "alibi" witness. Some courts have recognized that testimony is "akin" to "alibi" testimony if it undermines the likelihood that the defendant had the opportunity to commit the crime or bolstered the defendant's theory of the case, and that the failure to call a witness who could provide such testimony may be both deficient and prejudicial. *See, e.g., Lindstadt v. Keane*, 239 F.3d 191, 200 (2d Cir. 2001) (recognizing that a witness's testimony that a defendant charged with molesting his daughter was not living with his daughter at the time of the alleged offense was "something akin to an alibi"); *see also Pavel v. Hollins*, 261 F.3d 210, 222 (2d Cir. 2001) (citing *Lindstadt* for the proposition that, where a witness would have corroborated the defense theory of the case, the testimony in question was "akin to an alibi"); *Lopez v. Miller*, 915 F. Supp. 2d 373, 428-31 (E.D.N.Y. 2013) (concluding that failure to call "alibi" witnesses, even if counsel properly investigated their possible testimony, could be deficient and prejudicial). I have found no case, however, and Zoch has cited none, that supports Zoch's § 2255 counsel's contention that trial counsel *must* call such a witness, notwithstanding that the particular witness might "have warts" or be less than "perfect." The cases cited by Zoch show, at most, that there must be a "plausible strategic calculus" for not calling such a witness, *see Pavel*, 261 F.3d at 222, and that the failure to call such a witness *could be* deficient and prejudicial in the absence of an adequate strategic reason or a showing that the omitted witness could not have strongly refuted inculpatory evidence, *see Lopez*, 915 F. Supp.

2d at 428-31. Thus, Zoch is not entitled to relief, simply because his trial counsel did not call his wife, even if she was "akin" to an "alibi" witness.[3]

Next, Zoch argues that he can overcome the presumption of competence of his trial counsel's decision not to call Janelle, because trial counsel failed to ask essential follow-up questions before deciding whether or not to put Janelle on the stand. *See Holder*, 721 F.3d at 994 ("'[S]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel.'" (quoting *Kenley*, 937 F.2d at 1304). Again, I disagree.

As to the raccoon-shooting incident, Zoch argues that his trial counsel should have asked follow-up questions to clarify which firearm was used in the incident and the precise timeframe. I conclude that whether or not the firearm that Zoch used was one of the firearms he was charged with illegally possessing, that evidence would have been relevant

---

[3] Zoch's arguments are flawed to the extent that he appears to argue that it might have been legally dispositive that the firearms charged "belonged" to or were "owned" by Janelle, rather than Zoch. *See United States v. Hawkins*, 215 F.3d 858, 860 (8th Cir. 2000) ("[O]wnership is not relevant to the offense in question." (citing 18 U.S.C. § 922(g)). Trial counsel made clear that he understood this point, and I find that he properly tailored his theory of defense accordingly to whether or not Zoch had sufficient intention and ability to control the firearms charged to be found to have constructively possessed them. *See, e.g., United States v. Goodrich*, 739 F.3d 1091, 1097 (8th Cir. 2014) ("'Constructive possession is established by proof that the defendant had control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself.'" (quoting *United States v. Brown*, 634 F.3d 435, 439 (8th Cir. 2011)); *United States v. Chantharath*, 705 F.3d 295, 304 (8th Cir. 2013) ("'[C]onstructive possession generally requires knowledge of an object, the ability to control it, and the intent to do so.'" (quoting *United States v. Pazour*, 609 F.3d 950, 952–53 (8th Cir. 2010); *United States v. Kent*, 531 F.3d 642, 652 (8th Cir. 2008) (explaining that the "intent to control" requirement is not necessarily "intent to exercise control over the firearm," but may be "'intent and ability to exercise control over [the firearm] or the place where it is kept.'" (quoting *United States v. Robertson*, 519 F.3d 452, 455 (8th Cir. 2008)).

and admissible. If the testimony was that Zoch used a charged firearm in that incident, it would have been relevant and admissible as evidence of possession of a charged firearm. *See* FED. R. EVID. 401 (defining relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"); FED. R. EVID. 402 (providing that relevant evidence is generally admissible, but irrelevant evidence is not). If the testimony was that Zoch used some other, uncharged firearm, that evidence would have been relevant and admissible as Rule 404(b) "other acts" evidence reasonably suggesting that Zoch possessed firearms while prohibited from doing so. *See* FED. R. EVID. 404(b) (providing that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"); *United States v. Turner*, 781 F.3d 374, 389 (8th Cir. 2015) (explaining what must be shown for evidence to be admissible pursuant to Rule 404(b)). Thus, the failure to ask follow-up questions relating to what firearm Zoch used to shoot a raccoon and precisely when that incident occurred do not undermine the adequacy of the investigation of Janelle's potential testimony or the reasonableness of preventing Janelle from possibly disclosing that incident in trial testimony.

As to the incident involving Zoch and the pink .22 caliber rifle, Zoch argues that trial counsel should have asked follow-up questions to clarify whether Zoch actually handled or fired the firearm and whether it was, in fact, Zoch that Janelle was referring to as helping her learn to use that firearm, rather than the man who helped her "scope" that firearm. I admit that I find it somewhat odd that trial counsel *never* asked follow-up questions to clarify whether or not Zoch had actually handled or fired the pink .22 caliber

10

rifle while teaching Janelle how to use it, or even a question to clarify whether it was, in fact, Zoch who taught her how to use the pink .22 caliber rifle. Zoch argues that more investigation was required because of the apparent inconsistency between what trial counsel understood Janelle's testimony would be and the testimony that another man came to the Zochs' home to "scope" that rifle and to show Janelle how to use it. I conclude that trial counsel not wanting to know the answer to those questions initially is, perhaps, excusable, but—at least in the absence of other evidence about Zoch's use or possession of firearms—these questions seem like significant ones to have answered before making the ultimate decision about the risks versus the benefits of putting Janelle on the stand. On the other hand, as I pointed out during the evidentiary hearing, Janelle did not deny that she made the statement about Zoch teaching her to use the .22 caliber rifle. Nothing in the record demonstrates what the answers to the follow-up questions would have been.[4] Also, the importance of any follow-up questions concerning whether or not Zoch showed Janelle how to use this firearm and, if he did, what he did while doing so, is overwhelmed by unambiguous information from Janelle that Zoch had used a firearm to shoot a raccoon, which was sufficient, by itself, to "sink" Zoch's theory of defense.

Finally, Zoch argues that the presumption of competence can be overcome, because trial counsel's reasons for not calling his wife to present testimony "akin" to "alibi" testimony were unreasonable and insufficient, in light of the importance of her testimony, so that trial counsel's failure to call her cannot be excused as "strategic." I do not agree. As I noted above, "'there is considerable risk inherent in calling any

---

[4] I recognize that this lacuna in the record may be because Janelle was not asked any questions by § 2255 counsel during the evidentiary hearing about whether Zoch or another man showed her how to use the pink .22 caliber and that the reason might be the order in which the witnesses testified (Janelle before trial counsel). The fact remains, however, that Zoch has not filled this lacuna.

11

witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences.'" *Rodela-Aguilar*, 596 F.3d at 464 (quoting *Staples*, 410 F.3d at 488-89). Here, Zoch's trial counsel plainly had reasons to believe that Janelle might "not hold up well," either emotionally or factually, so that calling her was, in fact, dangerous. He knew that she admitted to mental issues and had a very adverse reaction to the mere suggestion that she testify, reasonably leading him to conclude that she might be a "loose cannon," if forced to testify. He also knew that Janelle could give factually inculpatory evidence about Zoch shooting a raccoon and helping her learn to use the pink .22 caliber rifle, which would have "sunk" his whole theory of defense. In these circumstances, trial counsel's decision not to call Janelle as a witness at trial was plainly reasonable and strategic.

Zoch has simply failed to show that trial counsel performed deficiently in not calling Janelle to testify at his trial. Failure to prove that element is sufficient reason to deny Zoch's ineffective assistance of counsel claim. *Hyles v. United States*, 754 F.3d 530, 533 (8th Cir. 2014) ("Failure to establish either prong of *Strickland* 'is fatal to a claim of ineffective assistance.'" (quoting *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013))

### B. *Certificate Of Appealability*

Denial of Zoch's claim for § 2255 relief raises the question of whether or not he is entitled to a certificate of appealability on that claim. In order to obtain a certificate of appealability on his claim, Zoch must make a substantial showing of the denial of a constitutional right. *See Miller–El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.

1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller–El v. Cockrell* that, "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I conclude that Zoch has failed to make a substantial showing that his claim is debatable among reasonable jurists, that a court could resolve any of the issues raised in that claim differently, or that any question raised in that claim deserves further proceedings. Consequently, a certificate of appealability is denied as to Zoch's claim. *See* 28 U.S.C. § 2253(c)(1)(B); *Miller-El*, 537 U.S. at 335-36; *Cox*, 133 F.3d at 569.

### III.   CONCLUSION

Upon the foregoing, petitioner Darwin Zoch's November 4, 2013, Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255 (§ 2255 Motion) (Civ. docket no. 1) is **denied** in its entirety. No certificate of appealabilty will issue.

**IT IS SO ORDERED**.

**DATED** this 17th day of July, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA